# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH WILLIAMS,** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| v. | : | NO. 95-7977 |
| **DONALD T. VAUGHN, Superintendent of the State Correctional Institution at Graterford; DISTRICT ATTORNEY FOR LEHIGH COUNTY; and THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA,** | : | |
| Respondents. | : | |

**DuBOIS, J.**                                                                                              **January 11, 2011**

## M E M O R A N D U M

## I.  INTRODUCTION

Petitioner Kenneth Williams ("Williams") is serving a life sentence at the State Correctional Institution at Graterford for the murder of truck driver Edward Miller.  After exhausting his remedies in state court, Williams filed a counseled Petition for Writ of Habeas Corpus ("Petition") in this Court on December 14, 2009.[1]  United States Magistrate Judge Carol Sandra Moore Wells submitted to the Court a Report and Recommendation dated September 29, 2010 ("R & R") in which she recommended that all of Williams's habeas claims be denied.

---

[1] Williams originally filed a Petition in this Court on December 27, 1995.  The Court dismissed the Petition without prejudice for failure to exhaust state remedies.  Williams v. Vaughn, 3 F. Supp. 2d 567, 571-75 (E.D. Pa. 1998).  To prevent Williams's claims from being time barred, the Court ruled that an amended petition raising the same issues would relate back to the date of the original Petition.  Id. at 578-79.

Presently before the Court are Williams's Objections to the Magistrate Judge's Report and Recommendation. Williams objects to the Magistrate Judge's conclusions with respect to all four claims in his Petition. For the reasons that follow, the R & R is approved and adopted in full, petitioner's objections are overruled and all of petitioner's claims are denied with prejudice without an evidentiary hearing.

## II. BACKGROUND

The facts of this case are described in detail in the R & R. The Court will not repeat them in this Memorandum except as is necessary to explain its rulings on Williams's objections.

## III. DISCUSSION

Williams's Petition raises four claims. The first two relate to an unusual hearing held before then-Chief Justice Robert Nix of the Pennsylvania Supreme Court shortly before the beginning of Williams's trial. Williams alleges the hearing violated both his Sixth Amendment right to counsel and his Fourteenth Amendment right to due process. The last two claims relate to the performance of Williams's trial counsel. In those claims, Williams asserts that the financial and time constraints placed on his attorney amounted to a total deprivation of counsel under the standard enunciated in United States v. Cronic, 466 U.S. 648 (1984). In the alternative, Williams contends that those same constraints led his attorney to render ineffective assistance under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). The Magistrate Judge recommended denying Williams relief on all four claims, and Williams objected to all four of the Magistrate Judge's conclusions. The Court will address each of Williams's objections in turn.

A. Hearing Before Chief Justice Nix: Deprivation of Counsel

Williams objects to the Magistrate Judge's recommendation that the Court deny habeas relief on his claim that he was denied counsel at a "critical stage" of the proceedings when he went unrepresented at the off-the-record hearing before Chief Justice Nix. Specifically, Williams alleges that the hearing was "critical" because Chief Justice Nix effectively set the trial date, leaving his new trial counsel with less than a month to prepare a capital defense.

1. *Did Chief Justice Nix Set the Trial Date?*

The R & R comprehensively sets forth the factual background of the hearing before Chief Justice Nix. In summary, Chief Justice Nix held an off-the-record hearing on August 20, 1985, with the prosecutor and three members of the Lehigh County Public Defenders Office to address an emergency petition from the defenders asking that their entire office be removed from the case. Williams was unrepresented at the hearing but had already expressed his preference that the defenders be replaced. Judge James Diefenderfer, who presided over Williams's trial, had previously granted the motion of one defender to withdraw as Williams's counsel but appointed two others in his place.

At the hearing, Chief Justice Nix made it clear that the defenders' request would be granted if it came before the full Supreme Court and directed the parties to tell Judge Diefenderfer that he would be reversed if he did not reconsider his decision. Judge Diefenderfer then issued an order removing the public defenders and delaying trial for less than a month. He later refused to grant Williams's new counsel a further continuance of the trial.

On the record before it, the Pennsylvania Supreme Court found that Chief Justice Nix's actions did not "foreclose the possibility of a continuance." Commonwealth v. Williams, 950

A.2d 294, 309 (Pa. 2008). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), if a claim is adjudicated in state court, the federal court must defer to the state court's factual determinations unless the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Williams contends that the Pennsylvania Supreme Court's decision was unreasonable and objects to the Magistrate Judge's determination to the contrary. As the Magistrate Judge found, however, there was ample evidence supporting the conclusion that Chief Justice Nix did not set the trial date. (See, e.g., NT 5/16/2000 at 134-35 (testimony of public defender present at hearing with Chief Justice Nix, agreeing that "the only issue Justice Nix became involved with was whether or not [the defenders] office should get out of the case").) The Magistrate Judge thus correctly concluded that the Pennsylvania Supreme Court's decision was reasonable, and Williams's objections on this issue are overruled.[2] The Court next turns to the Magistrate Judge's evaluation of the legal issue of whether the hearing was a "critical stage" of the proceedings against Williams.

---

[2] Williams also objects that the Magistrate Judge erred when she applied § 2254(e)(1), in addition to § 2254(d)(2), in analyzing whether Chief Justice Nix set the trial date. Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The Third Circuit has held that § 2254(d)(2) sets forth an overarching standard for evaluating whether the state court's decision on a factual issue was reasonable given the record before it, while § 2254(e)(1) applies to factual determinations that are "subsidiary to the ultimate decision." Lambert v. Blackwell, 387 F.3d 210, 235 (3d Cir. 2004). The Supreme Court has yet to address the question of exactly when § 2254(e)(1) applies. See Wood v. Allen, 130 S. Ct. 841, 849 (2010). Even assuming, arguendo, that § 2254(e)(1) does not apply in this instance, Williams's claim still fails, as he has not demonstrated that the state court's determination of the facts was unreasonable under § 2254(d)(2).

### 2. *Was the Hearing a "Critical Stage"?*

Under AEDPA, review of a state court's legal determinations is limited to whether the court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

The Supreme Court has defined a "critical stage" of a criminal proceeding, where counsel is required, as one in which "the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself." United States v. Wade, 388 U.S. 218, 227 (1967). As the Magistrate Judge noted, there is no Supreme Court precedent holding that a hearing at which a court removes counsel that the defendant wants replaced is a "critical stage." Further, it is difficult to discern what "potential substantial prejudice to defendant's rights" inheres in such a hearing. Id. Thus, the Pennsylvania Supreme Court's decision on this issue was not contrary to Wade or any other clearly established Supreme Court precedent, and Williams's objections on this issue are overruled.

### B. Hearing Before Chief Justice Nix: Due Process

Williams further asserts that the hearing before Chief Justice Nix violated his due process rights under the Fourteenth Amendment. The Magistrate Judge assumed, arguendo, that the hearing contravened Williams's due process rights but found the error harmless. Williams objects that (1) the error was structural, meaning harmless error analysis does not apply, and (2) even if harmless error analysis applies, the error was not harmless.

First, contrary to Williams's assertions, the assumed due process violation was not structural. The class of errors that are structural is "very limited." Palmer v. Hendricks, 592 F.3d

386, 397 (3d Cir. 2010) (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)). In evaluating whether an error is structural, a court focuses on "the difficulty of assessing the effect of the error" and the "irrelevance of harmlessness." United States v. Gonzalez-Lopez, 548 U.S. 140, 149 n.4 (2006). Williams argues that "[b]ecause it is impossible to determine with any precision how the trial would have proceeded had defense counsel had adequate time and resources to prepare for a capital trial," the error was structural. (Objections at 10.) But the hearing before Chief Justice Nix did not set the timing of trial or counsel's compensation. It resulted only in the removal of the public defenders office, which Williams requested. This is hardly one of the "very limited" examples of a structural error that permeates the entire trial.

Second, the Magistrate Judge correctly applied the standard for harmless error analysis on habeas review. An error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In this case, it is difficult to see how Williams was harmed by the assumed due process violation, as the only result of the hearing was the removal of counsel Williams did not want. Moreover, as the Magistrate Judge wrote, the prosecution's case was strong – including, inter alia, Williams's confession, his use of the victim's truck around the time of the victim's death and his use of the victim's credit cards after the victim's death. Thus, even if the hearing constituted a due process violation, it was harmless error, and Williams's objections to the contrary are overruled.

    C.    Total Deprivation of Counsel Under United States v. Cronic

Williams also objects to the Magistrate Judge's conclusion that he was not entitled to relief on his claim that the time and financial restraints put on his attorney completely deprived

Williams of assistance of counsel at his trial. A defendant is deemed to have been completely denied assistance of counsel – with the result that prejudice can be presumed – only "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Bell v. Cone, 535 U.S. 685, 697 (2002) (quoting Cronic, 466 U.S. at 659) (emphasis in original).

In this case, Williams's attorney had only about three weeks to prepare for a capital trial. His fee was capped at $3,500, and his investigative budget was $500. The Supreme Court, however, has never adopted a per se rule that a defendant is denied assistance of counsel when his attorney has little time to prepare. Chambers v. Maroney, 399 U.S. 42, 54 (1982); see also Avery v. Alabama, 308 U.S. 444, 450-53 (1940). As the Magistrate Judge stated, Williams's attorney had comparable preparation time to and more experience than the defense attorney in Cronic, when the Supreme Court held the restrictions on counsel did not create a total deprivation of counsel. 466 U.S. at 666.

Thus, the Magistrate Judge correctly concluded that the Pennsylvania Supreme Court's decision on this claim did not involve an "unreasonable application" of "clearly established" federal law. § 2254(d)(1). Williams's objections to the Magistrate Judge's recommendation on this claim are overruled.

        D.      <u>Ineffective Assistance of Counsel Under Strickland v. Washington</u>

Finally, Williams argues that the restraints on his counsel led him to fail to discover and present certain exculpatory evidence and to thereby render ineffective assistance of counsel. The exculpatory evidence at issue is set forth fully in the R & R. (R & R at 22-23 n.19.)

"Strickland v. Washington supplies the standard for addressing a claim of ineffective assistance of counsel." United States v. Smack, 347 F.3d 533, 537 (3d Cir. 2003) (citing

Strickland, 466 U.S. at 687). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

This standard requires a familiar two-part inquiry. "First, the defendant must show that counsel's performance was deficient," that is, "that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The measure for counsel's performance under the first prong of Strickland is "whether counsel's assistance was reasonable considering all the circumstances" including "prevailing professional norms." Id. at 687-88. "Second, the defendant must show that [counsel's] deficient performance prejudiced the defense." Id. at 687. The defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Williams argues that the constraints imposed on counsel led to his failure to find and call several witnesses. The Pennsylvania Supreme Court concluded that it was unnecessary to evaluate whether Williams's trial counsel performed deficiently because Williams could not show prejudice given the overwhelming evidence of guilt presented at trial. That evidence included: (1) Williams's confession; (2) his recantation at trial, which the state court deemed implausible; (3) evidence that Williams possessed the victim's truck within the time frame that the victim died; and (4) Williams's possession and use of the victim's credit cards and other personal property.

The Magistrate Judge correctly determined that the Pennsylvania Supreme Court's determination was not unreasonable. As the Magistrate Judge stated, to the extent it was admissible, the evidence Williams argues should have been presented might have "cast some

doubt on the prosecution's case." (R & R at 23 n.19.) However, against this marginal new evidence must be weighed the strong evidence of guilt to determine whether there is a "reasonable probability" the result would have been different if Williams's attorney had discovered and called the additional witnesses. And, as with the other claims, the Pennsylvania Supreme Court's decision is owed deference under AEDPA.[3]

Applying Strickland in light of AEDPA, the Court concludes that the Pennsylvania Supreme Court's decision that Williams did not receive ineffective assistance was not unreasonable. The Court therefore adopts the Magistrate Judge's recommendation that Williams's ineffective assistance claim be denied and overrules Williams's objections to the contrary.

**IV. CONCLUSION**

For the foregoing reasons, the R & R is approved and adopted in full, petitioner's objections are overruled and all of petitioner's claims are denied with prejudice without an evidentiary hearing. An appropriate order follows.

---

[3] The Magistrate Judge concluded that the state court's decision also merited deference under § 2254 (d)(2) because of the purported factual determination that the case against Williams was overwhelming. Williams argues that this was not really a factual determination, but rather part of the legal explanation for why Williams was not prejudiced under Strickland. However, even assuming, arguendo, that § 2254(d)(2) is inapplicable, Williams's objections are still overruled, as he has failed to demonstrate that the Pennsylvania Supreme Court's decision was unreasonable under § 2254(d)(1).